1

2                     UNITED STATES DISTRICT COURT

3                    CENTRAL DISTRICT OF CALIFORNIA

4                          WESTERN DIVISION

5

6
     UNITED STATES OF AMERICA,      )
7                                   )
                                    )
8             PLAINTIFF,            )
                                    )
9             V.                    )
                                    )   20-MJ-01341
10                                  )   LOS ANGELES, CALIFORNIA
     KEITH LAWRENCE MIDDLEBROOK,    )
11                                  )   MARCH 27, 2020
                                    )   (1:04 P.M. TO 1:48 P.M.)
12                                  )
              DEFENDANT.            )
13   _____)

14
                          DETENTION HEARING
15
              BEFORE THE HONORABLE JOHN E. MC DERMOTT
16                 UNITED STATES MAGISTRATE JUDGE

17
     APPEARANCES:            SEE NEXT PAGE
18
     COURT REPORTER:         RECORDED; COURT SMART
19
     COURTROOM DEPUTY:       SHARON LORENZO
20
     TRANSCRIBER:            DOROTHY BABYKIN
21                           COURTHOUSE SERVICES
                             1218 VALEBROOK PLACE
22                           GLENDORA, CALIFORNIA  91740
                             (626) 963-0566
23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

1    APPEARANCES:

2    FOR THE PLAINTIFF UNITED STATES OF AMERICA:

3                NICOLA T. HANNA
                 UNITED STATES ATTORNEY
4                BRANDON FOX
                 CHIEF, CRIMINAL DIVISION
5                ASSISTANT UNITED STATES ATTORNEY
                 BY:  VALERIE MAKAREWICZ
6                ASSISTANT UNITED STATES ATTORNEY
                 312 NORTH SPRING STREET
7                LOS ANGELES, CALIFORNIA  90012

8
     FOR THE DEFENDANT KEITH LAWRENCE MIDDLEBROOK:
9
                 AMY KARLIN, ACTING
10               FEDERAL PUBLIC DEFENDER
                 BY:  IJEOMA UCHECHI EKE
11               DEPUTY FEDERAL PUBLIC DEFENDER
                 321 EAST 2ND STREET
12               LOS ANGELES, CALIFORNIA  90012

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                          I N D E X

2    20-MJ-01341                              MARCH 27, 2020

3    PROCEEDINGS:  DETENTION HEARING

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1                    LOS ANGELES, CALIFORNIA; MARCH 27, 2020; 1:04 P.M.

 2                    THE CLERK:  UNITED STATES MAGISTRATE JUDGE PRESIDING.

 3                    YOU MAY BE SEATED.

 4                    THE COURT:  ARE THERE ANY MEMBERS OF THE PRESS

 5     PRESENT?

 6                    (NO AUDIBLE RESPONSE.)

 7                    THE COURT:  OKAY.

 8                    LET'S PROCEED WITH MIDDLEBROOK.

 9                    THE CLERK:  CALLING CASE NUMBER 20-1341-M, UNITED

10     STATES OF AMERICA VERSUS KEITH LAWRENCE MIDDLEBROOK.

11                    COUNSEL, PLEASE STATE YOUR APPEARANCES.

12                    MS. MAKAREWICZ:  GOOD AFTERNOON, YOUR HONOR.

13                    ASSISTANT UNITED STATES ATTORNEY VALERIE MAKAREWICZ

14     ON BEHALF OF THE GOVERNMENT.

15                    MS. EKE:  GOOD AFTERNOON, YOUR HONOR.

16                    IJEOMA EKE.  I CAN SPELL THAT FOR THE COURT REPORTER.

17                    I-J-E-O-M-A.  LAST NAME EKE, E-K-E, DEPUTY FEDERAL

18     PUBLIC DEFENDER ON BEHALF OF MR. MIDDLEBROOK, WHO'S PRESENT AND

19     IN CUSTODY TO MY LEFT.

20                    THE COURT:  WHAT WAS YOUR LAST NAME AGAIN?

21                    MS. MAKAREWICZ:  MAKAREWICZ.

22                    THE COURT:  CAN YOU SPELL IT FOR ME.

23                    MS. MAKAREWICZ:  CERTAINLY.  M-A-K-A-R-E-W-I-C, AS IN

24     CHARLES, Z, AS IN ZEBRA.

25                    THE COURT:  OKAY.
```

```
 1              IS THE GOVERNMENT STILL SEEKING DETENTION OF THE
 2   DEFENDANT?
 3              MS. MAKAREWICZ:  WE HAVE A MODIFIED -- WE'RE NOT,
 4   YOUR HONOR.
 5              WE ARE SEEKING BOND FOR THE DEFENDANT.
 6              WE AGREE WITH PRETRIAL IN ITS RECOMMENDATION OF AN
 7   APPEARANCE BOND OF $150,000 ALONG WITH AN AFFIDAVIT OF SURETY
 8   WITHOUT JUSTIFICATION BY DEFENDANT'S MOTHER OR A RESPONSIBLE
 9   THIRD PARTY.
10              THE COURT:  IN WHAT AMOUNT?
11              MS. MAKAREWICZ:  PARDON?
12              THE COURT:  IN WHAT AMOUNT?
13              MS. MAKAREWICZ:  150,000.
14              IF I MAY, YOUR HONOR, DEFENDANT HAS A PREVIOUS MATTER
15   IN THE SOUTHERN DISTRICT OF CALIFORNIA BACK IN 2014.
16              I HAVE CHECKED.  DEFENDANT'S MOTHER STILL OWNS THE
17   SAME RESIDENCE THAT WAS USED AS COLLATERAL IN THE SOUTHERN
18   DISTRICT OF CALIFORNIA'S CASE.
19              AND IN THAT MATTER THE COURT SET VERY SIMILAR CON- --
20   SIMILAR CHARGES.  THE COURT SET A BOND, THE APPEARANCE BOND OF
21   175,000 WITH AN AFFIDAVIT OF JUSTIFICATION AND A DEEDING OF THE
22   PROPERTY.
23              THE COURT:  YOU'RE NOT ASKING FOR A DEEDING OF THE
24   PROPERTY HERE?
25              MS. MAKAREWICZ:  I AM ASKING FOR A DEED, BUT WE WOULD
```

6

1  ALTERNATIVELY CONSIDER HIS MOTHER AS SIGNING BECAUSE WE BELIEVE

2  IF THE DEFENDANT WERE TO VIOLATE HIS BOND, WE WOULD PROCEED TO

3  MOVE AGAINST THE HOUSE.

4            THE COURT:  GOTCHA.

5            MS. MAKAREWICZ:  WE WOULD PREFER THAT THERE WOULD BE

6  DEEDING.

7            BUT WE UNDERSTAND THAT DEFENDANT'S MOTHER IS AN

8  ELDERLY PERSON.  AND GETTING DEEDS OF PROPERTY AT THIS TIME

9  RECORDED WITH THE COURT MAY BE VERY DIFFICULT FOR SOMEONE OF

10 HER AGE.

11           WE WOULD PREFER THE DEEDING, BUT WE WOULD TAKE ALSO

12 THE AFFIDAVIT OF THE 150 SIGNED BY HIS MOTHER IN THE

13 ALTERNATIVE.

14           THE COURT:  OKAY.

15           ANYTHING FURTHER?

16           MS. MAKAREWICZ:  WE DO REQUEST THE 150,000 AMOUNT.

17           THAT'S IT, YOUR HONOR.

18           THE COURT:  ALL RIGHT.

19           YESTERDAY MR. ANTONY MADE REFERENCE TO ADDITIONAL

20 CONDITIONS --

21           MS. MAKAREWICZ:  YES.

22           THE COURT: -- NOT SET FORTH IN THE PRETRIAL REPORT --

23           MS. MAKAREWICZ:  YES, YOUR HONOR.

24           THE COURT:  -- WHICH HAD TO DO WITH RESTRICTIONS ON

25 USE OF SOCIAL MEDIA, I BELIEVE.

7

1          MS. MAKAREWICZ:  YES, YOUR HONOR.

2          THE COURT:  ALL RIGHT.

3          SO, MY QUESTION IS HAVE YOU SPOKEN WITH DEFENSE

4   COUNSEL ABOUT YOUR BOND REQUEST AND THE SOCIAL MEDIA

5   RESTRICTION REQUEST?

6          MS. MAKAREWICZ:  I APOLOGIZE TO THE COURT.  I SPOKE

7   TO HER ABOUT MY BOND REQUEST, BUT I DIDN'T SPEAK TO HER ABOUT

8   THE CONDITIONS.

9          THE COURT:  WELL, SHE'S AWARE OF IT BECAUSE IT WAS --

10          MS. MAKAREWICZ:  DISCUSSED THOROUGHLY YESTERDAY.

11          THE COURT:  AND MR. ANTONY PUT IT ON THE RECORD, SO.

12          MS. MAKAREWICZ:  YES.

13          BUT I DID GIVE OUR POSITION TO DEFENSE COUNSEL ALONG

14   WITH SUPPORTING PAPERWORK JUST NOW.

15          THE COURT:  ALL RIGHT.

16          MS. EKE, IS -- ARE THESE CONDITIONS ACCEPTABLE?

17          MS. EKE:  NO, YOUR HONOR.

18          WE ARE REQUESTING THAT MR. MIDDLEBROOK'S MOTHER SIGN

19   A 20,000-DOLLAR UNSECURED APPEARANCE BOND.

20          SHE IS CURRENTLY ON SOCIAL SECURITY.  SHE RECEIVES

21   AROUND $800 A MONTH.  TWENTY-THOUSAND DOLLARS WOULD BE ABOUT

22   ONE YEAR WORTH OF HER BENEFITS, AND SHE'S WILLING TO SIGN AN

23   UNSECURED APPEARANCE BOND TO THAT AMOUNT.

24          NOW, THE GOVERNMENT MENTIONED MR. MIDDLEBROOK'S

25   PREVIOUS CASE.  I DON'T KNOW ANYTHING ABOUT THAT CASE OR HIS

```
 1    FINANCES AT THIS TIME.  BUT WHAT WE KNOW IS THAT FOR THIS CASE
 2    HE DOESN'T HAVE ANY FINANCES AS THE GOVERNMENT PROFFERED WHEN
 3    THEY PROFFERED THE PRETRIAL --
 4              THE COURT:  WELL, AS I UNDERSTAND --
 5              MS. EKE:  -- SERVICES REPORT.
 6              THE COURT:  JUST ONE SECOND.
 7          AS I UNDERSTAND WHAT THE GOVERNMENT IS SAYING, IT
 8    DOESN'T HAVE TO BE THE MOTHER.  IT CAN BE ANOTHER RESPONSIBLE
 9    THIRD PARTY.
10              AM I CORRECT?
11              MS. MAKAREWICZ:  THAT'S CORRECT, YOUR HONOR.
12              WE WOULD PREFER THE MOTHER BECAUSE OF THE SECURED
13    HOUSE.
14              THE COURT:  I UNDERSTAND.
15              MS. MAKAREWICZ:  YEAH.
16              THE COURT:  BUT I'M GOING TO COME BACK TO THIS IN A
17    MOMENT AFTER I FINISH WITH MS. EKE -- OR AFTER MS. EKE
18    FINISHES.
19              MS. EKE:  YES, YOUR HONOR.  UNFORTUNATELY WE DO NOT
20    HAVE ANOTHER THIRD PARTY.  WE HAVE HIS MOTHER.  THAT IS WHO HE
21    HAS.  THAT'S THE FAMILY MEMBER THAT HE HAS.  AND SHE IS WILLING
22    TO DO $20,000.  SHE KNOWS THAT THAT'S ABOUT A YEAR'S WORTH OF
23    SALARY -- OR INCOME FOR HER.  BUT I THINK WHAT'S IMPORTANT IS
24    THAT WE'RE LOOKING FOR THE LEAST RESTRICTIVE MEANS.
25              NOW, MR. MIDDLEBROOK DOES NOT HAVE ANY OTHER ASSETS.
```

```
 1    SO, $20,000 --

 2              THE COURT:  I THINK YOU --

 3              MS. EKE:  -- HIS MOM LOSING THAT.

 4              THE COURT:  I THINK YOU SHOULD BE CAREFUL IN THE WAY

 5    YOU PUT THAT.  I DON'T THINK YOU WANT TO BE EMBRACING FROM YOUR

 6    OWN POSITION WHAT ASSETS THIS DEFENDANT HAS OR DOESN'T HAVE

 7    BECAUSE YOU DON'T HAVE ANY PERSONAL KNOWLEDGE.

 8              DO YOU?

 9              MS. EKE:  I DO NOT HAVE ANY PERSONAL KNOWLEDGE, YOUR

10    HONOR.

11              THE COURT:  ALL RIGHT.

12              LET ME GO -- ONE OF THE THINGS THAT CONCERN ME FROM

13    THE HEARING YESTERDAY, WHICH I WANT TO HAVE SOME DISCUSSION

14    ABOUT, ON PAGE 3 OF YESTERDAY'S REPORT PRETRIAL SAYS:

15              "THE DEFENDANT DID NOT REPORT ANY ASSETS.

16               HE ADVISED THAT HE IS LIVING OFF LOANS FROM HIS

17               COMPANIES.  HIS MONTHLY RENT IS $5,200."

18              LIVING OFF LOANS FROM HIS OWN COMPANIES IS AN

19    ADMISSION THAT HE HAS ASSETS.  WHAT COMPANIES ARE WE TALKING

20    ABOUT.  WHAT LOANS ARE WE TALKING ABOUT.  WHERE'S THE PAPERWORK

21    ON THAT.  LIVING OFF LOANS FROM HIS COMPANIES.  THAT'S AN

22    ASSET.  I MEAN, HE OBVIOUSLY OWNS COMPANIES, AND HE'S TAKING

23    THE MONEY FROM THOSE COMPANIES TO PAY FOR EXPENSES INCLUDING

24    RENT.  IN FACT, IF YOU TAKE THE MONTHLY RENT OF $5,200, THAT'S

25    $60,000 A YEAR.
```

1           IT'S VERY DIFFICULT FOR ME TO HAVE ANY BELIEF IN AN

2    ASSERTION THAT THIS DEFENDANT DOES NOT HAVE ASSETS.

3           MS. EKE:  YES, YOUR HONOR.  IT'S MY UNDERSTANDING

4    THAT HE USED TO HAVE ASSETS AS IS REPORTED IN THE PRETRIAL'S

5    REPORT THAT WAS GIVEN TODAY.  THEY MENTION THAT HE HAD ASSETS.

6           AND IN THEIR REPORT THEY EVEN INDICATED THAT BASED ON

7    THEIR INVESTIGATION IT WAS UNCLEAR IF HE STILL HAD THOSE

8    ASSETS.

9           HE DOES NOT HAVE THOSE ASSETS AS IS REPORTED --

10          THE COURT:  ARE YOU SAYING THAT --

11          MS. EKE:  -- IN THE PRETRIAL --

12          THE COURT:  -- AS A STATEMENT OF FACT, OR ARE YOU

13   STATING THAT AS A STATEMENT OF YOUR OWN PERSONAL BELIEF?

14          MS. EKE:  I AM STATING THAT BASED ON WHAT WAS

15   PROFFERED BY THE GOVERNMENT, WHICH IS INCLUDED IN THE PRETRIAL

16   SERVICES REPORT.

17          THE COURT:  I'M NOT ASKING ABOUT WHAT WAS PROFFERED

18   ABOUT THE GOVERNMENT.  I'M ASKING ABOUT WHAT YOU KNOW FROM

19   SPEAKING WITH THE DEFENDANT.

20          MS. EKE:  YOUR HONOR, IT'S MY UNDERSTANDING THAT

21   THERE ARE NO ASSETS TO PUT FORTH IN FURTHERANCE OF THIS BAIL

22   PACKAGE AS WAS REPORTED TO PRETRIAL SERVICES.

23          AND IF I MAY, I KNOW PRETRIAL SERVICE THEY DO A GOOD

24   JOB AND THEY DID THEIR INVESTIGATION.  AND THEY DIDN'T COME

25   BACK WITH ANY ASSETS BELONGING TO MR. MIDDLEBROOK.

1            THE COURT:  I GOT THE DISTINCT IMPRESSION YESTERDAY

2    THAT PRETRIAL HAD NOT REALLY DONE MUCH OF A FINANCIAL

3    INVESTIGATION HERE.  THAT'S WHY I ASKED PRETRIAL THE QUESTION I

4    DID YESTERDAY.  IT WAS A VERY SHORT DISCUSSION WITH THE

5    DEFENDANT.  BUT THERE WAS NO -- THERE WERE NO -- THERE WAS NO

6    ACTUAL FINANCIAL INVESTIGATION.  I DON'T KNOW THAT THERE'S BEEN

7    A CREDIT REPORT RUN.

8            THE INFORMATION ABOUT THE WITNESS'S ASSETS IS

9    EXTREMELY VAGUE.  WE KNOW FROM INFORMATION PROVIDED JUST IN THE

10   LAST FEW MINUTES THAT THERE'S -- THERE ARE COMPANIES INVOLVED.

11           GOVERNMENT HAVE ANY COMMENT ON THE DEFENDANT'S

12   ASSETS?

13           MS. MAKAREWICZ:  THAT HE'S --

14           THE COURT:  PART OF THE REASON I'M GOING THROUGH THIS

15   IS BECAUSE IT'S GOING TO AFFECT HOW MUCH I INSIST THAT THE

16   MOTHER COVER.

17           MS. MAKAREWICZ:  I AGREE, YOUR HONOR.

18           IF DEFENDANT -- WHETHER OR NOT HE OWNS ASSETS IS

19   QUESTIONABLE.

20           THERE ARE COMPANIES WHO -- THERE ARE REGISTERED

21   CORPORATIONS TO THE DEFENDANT IN THE STATE OF FLORIDA AND IN

22   THE STATE OF NEVADA.

23           WE HAVE NOT YET --

24           THE COURT:  THERE'S ALSO REAL PROPERTY IN COLORADO

25   AND OTHER -- TWO OR THREE OTHER STATES.

1              MS. MAKAREWICZ:  CORRECT.

2              YOU KNOW, WE -- WE CAN GO BACK TO DEFENDANT'S

3    REPRESENTATIONS MADE ON SOCIAL MEDIA THAT I CHECKED THIS

4    MORNING.  DEFENDANT'S WEBSITE STATES THAT HE IS A BILLIONAIRE.

5    THAT I DON'T KNOW IS EXCEPTIONALLY CREDIBLE.

6              BUT, YOU KNOW, IN -- I WOULD LIKE TO BRING THE COURT

7    JUST --

8              THE COURT:  WELL, WE'VE GOT A 50/50 THING.  EITHER

9    HE'S GOT A LOT OF MONEY OR HE'S PUFFING AND LYING AND --

10             MS. MAKAREWICZ:  CORRECT.

11             I WOULD LIKE TO JUST --

12             THE COURT:  -- MAKING HIS FRAUD SCHEME TRY TO WORK.

13             MS. MAKAREWICZ:  RIGHT.

14             I WOULD LIKE TO DRAW THE COURT'S ATTENTION BACK TO

15   THE SOUTHERN DISTRICT CASE.  ONLY BECAUSE IN THAT MATTER HE WAS

16   APPOINTED COUNSEL BECAUSE HE WAS FOUND NOT TO HAVE ANY

17   FINANCIAL ASSETS.  AND THAT WAS NOT UNDER ANY --

18             THE COURT:  WHOA, SAY THAT AGAIN.

19             MS. MAKAREWICZ:  DEFENDANT WAS APPOINTED COUNSEL --

20             THE COURT:  YES.

21             MS. MAKAREWICZ:  -- IN THAT MATTER IN 2014 TO THE

22   FEDERAL PUBLIC DEFENDER'S OFFICE IN SAN DIEGO BECAUSE HE

23   SUBMITTED A FINANCIAL AFFIDAVIT AND QUALIFIED BECAUSE HE HAD NO

24   ASSETS AT THAT TIME.

25             INSTEAD, THE COURT DID ORDER THE DEEDING OF THE

13

1   PROPERTY OF $175,000.  DEFENDANT WAS ON BOND FOR A YEAR AND

2   MADE ALL OF HIS -- ALL OF HIS APPEARANCES.

3           THE COURT:  OKAY.

4           MS. MAKAREWICZ:  HE WAS ALSO PERMITTED TO TRAVEL.  HE

5   CHECKED IN WITH PRETRIAL SERVICES BEFORE AND AFTER TO THE POINT

6   WHERE THE DISTRICT COURT JUDGE IN SAN DIEGO DIDN'T REQUIRE HIM

7   TO FILE ANY MORE TRAVEL REQUESTS.  HE COULD JUST CLEAR IT WITH

8   PRETRIAL.  THAT'S BECAUSE HIS FOLKS' HOUSE WAS ON THE LINE.

9           WE'RE ASKING FOR THE SAME CONDITIONS.  THIS IS AN

10  EMERGENT AND WIDESPREAD FRAUD THE DEFENDANT HAS DONE TO TAKE

11  ADVANTAGE OF PANIC CONDITIONS.  WAY DIFFERENT THAN IT WAS IN

12  2014.

13          WE'RE ASKING FOR THE SAME AMOUNT, AND, YES, WE WOULD

14  REQUEST THE DEEDING OF THE PROPERTY.  BUT UNDERSTAND WE HAVE

15  COMPASSION FOR HIS MOTHER WHO IS ELDERLY AND WOULD DEFER TO THE

16  COURT ON THAT.

17          MS. EKE:  YOUR HONOR, IF I MAY?

18          THE COURT:  OF COURSE.  GO AHEAD.

19          MS. EKE:  I JUST WANT TO REITERATE THAT

20  MR. MIDDLEBROOK IS PRESUMED INNOCENT.  SO, AS HE STANDS IN

21  COURT TODAY --

22          THE COURT:  OF COURSE.

23          MS. EKE:  -- HE IS INNOCENT OF ANY OF THE CHARGES

24  AGAINST HIM.

25          THE COURT:  OF COURSE.

1          MS. EKE:  AND I THINK THE GOVERNMENT --

2          THE COURT:  WELL --

3          MS. EKE:  I THINK THE GOVERNMENT MADE A GREAT

4   ARGUMENT AS TO HIS PRIOR CASE THAT LASTED FOR TWO YEARS IN

5   WHICH HE WAS ON PRETRIAL SERVICES' SUPERVISION.  AND HE MADE

6   EVERY COURT APPEARANCE.  THERE WAS NEVER AN ISSUE.  AND THAT

7   CASE WAS ULTIMATELY DISMISSED.

8          HE HAS DEMONSTRATED THAT HE CAN DO WHAT HE NEEDS TO

9   DO WHEN HIS MOTHER IS ON THE LINE.  HE UNDERSTANDS THAT $20,000

10  IS HIS MOTHER'S ENTIRE INCOME FOR A WHOLE YEAR.  SHE IS AN

11  ELDER WOMAN.  HE WOULD NOT TAKE AN ENTIRE YEAR'S WORTH OF

12  INCOME FROM HIS MOTHER.

13         SO, WE TALK ABOUT LEAST RESTRICTIVE MEANS TO ASSURE

14  HIS RETURN TO COURT AND THE SAFETY OF THE COMMUNITY.  HIS

15  MOTHER'S ENTIRE INCOME FROM -- FOR A YEAR WHEN SHE'S AGEING IS

16  SUFFICIENT TO SATISFY THAT.  AND SHE IS WILLING TO SIGN --

17  PRETRIAL TALKED TO HER.  I TALKED TO HER.  SHE IS WILLING TO

18  SIGN TO SHOW THAT SHE BELIEVES THAT HER SON WILL ACTUALLY COME

19  TO COURT --

20         THE COURT:  I'M GOING TO --

21         MS. EKE:  -- WHEN HE'S SUPPOSED TO.

22         THE COURT:  I'M GOING TO REQUIRE THAT SOME PORTION OF

23  THE PROPERTY BE USED FOR SECURITY.  WHAT WE NEED TO DO NOW IS

24  RESOLVE THE AMOUNT.  I'M NOT INCLINED TO DO 150,000.  I AM

25  INCLINED TO DO 50, WHICH I THINK IS SUFFICIENT TO PROVIDE A

15

1  DISINCENTIVE TO FLEE.  WE'RE NOT TAKING ANY INCOME FROM THE

2  MOTHER.  ALL WE'RE DOING IS PUTTING THE PROPERTY -- USING THE

3  PROPERTY AS SECURITY.  IF HE MAKES HIS APPEARANCES, IT'S NOT

4  GOING TO BE A PROBLEM FOR HER.

5           SO, THAT'S WHAT THE COURT IS GOING TO ORDER.

6           MS. EKE:  WELL, YOUR HONOR, JUST SO WE'RE CLEAR.

7           YOU'RE ASKING FOR IT TO BE -- FOR IT TO BE NOT

8  WITHOUT JUSTIFICATION.  SO, YOU'RE NOT ASKING FOR AN UNSECURED

9  APPEARANCE BOND.  YOU'RE ASKING FOR A SECURED ONE WITH THE

10 PROPERTY OR WITH --

11          THE COURT:  YES.

12          MS. EKE:  -- YOUR HONOR WOULDN'T BE SATISFIED IF SHE

13 SIGNED A 50,000-DOLLAR UNSECURED APPEARANCE BOND?

14          THE COURT:  NO.  I WANT SECURITY.  THAT'S WHY I GAVE

15 YOU THE -- I MEAN, YOU COULD ARGUE ABOUT THE AMOUNT, BUT SOME

16 PORTION OF THAT -- OF HER HOUSE IS GOING TO BE USED AS SECURITY

17 HERE.

18          MS. EKE:  IN THAT CASE, YOUR HONOR, I AM ASKING THAT

19 YOU ORDER THESE RELEASE CONDITIONS.  AND THAT IT'S GOING TO

20 TAKE HER SOME TIME TO ACTUALLY DO THAT, IF SHE'S ABLE TO DO

21 THAT, ESPECIALLY IN THE TIME THAT WE ARE IN.  SO, I'M ASKING

22 THAT YOU RELEASE MR. MIDDLEBROOK WITH THESE CONDITIONS AND GIVE

23 US A TIMEFRAME FOR WHEN WE HAVE TO SATISFY THOSE CONDITIONS OR

24 RETURN TO COURT.

25          THE COURT:  WHAT'S THE GOVERNMENT'S VIEW THERE?

1           MS. MAKAREWICZ:  WE WOULD OBJECT, YOUR HONOR.  THIS

2    IS THE SAME EXACT INSTANCE AS IN SAN DIEGO.  WE DISAGREE WITH

3    THE COURT, BUT APPRECIATE THE FACT THAT THE AMOUNT WILL BE

4    SECURED BY THE PROPERTY.  DEFENDANT IS A DANGER --

5           THE COURT:  YOU DISAGREE BECAUSE YOU WOULD HAVE 150?

6           MS. MAKAREWICZ:  YES, YOUR HONOR, I WOULD -- I WOULD

7    DISAGREE.  BUT I DO APPRECIATE THE COURT'S RULING ON THE

8    SECURITY.  WE WOULD NOT REQUEST THAT.

9           DEFENDANT IS A DANGER TO THIS COMMUNITY AS MR. ANTONY

10   EXPRESSED YESTERDAY.  WE WOULD PREFER TO HAVE THIS SECURED AND

11   DONE BEFORE THE DEFENDANT IS RELEASED.

12          THE COURT:  I AGREE.

13          MS. EKE:  YOUR HONOR, IF I MAY.  THE GOVERNMENT NEVER

14   PROFFERED ANYTHING TOWARDS DANGER TO THE COMMUNITY YESTERDAY.

15   THEIR ARGUMENT WAS ACTUALLY THAT BECAUSE HE MADE YOUTUBE AND

16   INSTAGRAM POSTS THAT HE WAS A DANGER.  BUT AS WE DEMONSTRATED,

17   HE HASN'T HAD ANY CONVICTIONS SINCE THE EARLY 2000S.  AND IT

18   WAS A MISDEMEANOR.  HE HASN'T DEMONSTRATED ANY KIND OF

19   VIOLENCE.  HE'S DEMONSTRATED WITH HIS LAST FEDERAL CASE, WHICH

20   HE WAS ON SUPERVISION FOR TWO YEARS, THAT HE CAN DO WHAT HE

21   NEEDS TO DO.

22          THERE HAS BEEN NO -- NOTHING PROFFERED TO SHOW THAT

23   HE WOULD ACTUALLY BE A DANGER TO THIS COMMUNITY.  AND THE

24   GOVERNMENT DIDN'T PROFFER ANYTHING TOWARDS THAT END YESTERDAY

25   AS WELL.  AND I REMEMBER YOUR HONOR SAID SPECIFICALLY WHEN THE

1  GOVERNMENT MADE THEIR ARGUMENTS THAT IT WAS WEAK.  BECAUSE ALL

2  THEY COULD POINT TO WAS THAT HE ALLEGEDLY MADE YOUTUBE AND

3  INSTAGRAM PUBLICATIONS.  THAT DOES NOT DEMONSTRATE THAT HE'S A

4  DANGER TO THE COMMUNITY.  IT DOESN'T SHOW THAT AT ALL.

5         ALSO, WHEN WE STARTED THIS YESTERDAY, WE TALKED ABOUT

6  HOW THIS IS A TWO-TIER PROCESS IN DETERMINING WHETHER OR NOT

7  MR. MIDDLEBROOK COULD BE DETAINED.  THE FIRST IS THAT THE

8  GOVERNMENT HAD TO SHOW THAT THERE WAS A SERIOUS RISK OF FLIGHT

9  BEFORE WE COULD EVEN DETERMINE IF DETENTION OR A DETENTION

10  HEARING WAS WARRANTED.

11         AGAIN, IN TERMS OF SERIOUS RISK OF FLIGHT, ALL THEY

12  PROFFERED WAS THE POSTINGS THAT HE MADE.  SO, WE GOT OUT OF THE

13  REALM OF DETENTION OR RELEASE AND WE WERE ONLY FOCUSED ON THE

14  CONDITIONS OF RELEASE.

15         SO, SINCE WE ARE IN AGREEMENT OF THAT, THERE'S

16  NOTHING TO SHOW THAT HE IS A DANGER TO THE COMMUNITY.  IN FACT,

17  EVERYTHING THAT THE GOVERNMENT HAS PROFFERED SHOWS THAT HE WILL

18  COME TO COURT AND THE COMMUNITY WILL BE SAFE AS HAS BEEN

19  DEMONSTRATED BY HIS PAST HISTORY.

20         THE COURT:  I AGREE THAT WHAT HAPPENED IN SAN DIEGO

21  IS EVIDENCE OF -- AGAINST FLIGHT RISK, BUT THAT WAS UNDER

22  CIRCUMSTANCES WHERE THE HOME WAS USED AS SECURITY AND PROVIDED

23  A DISINCENTIVE TO THE DEFENDANT TO FLEE.

24         MS. EKE:  AND DANGER --

25         THE COURT:  I'D LIKE TO HEAR FROM THE GOVERNMENT

1  REGARDING FLIGHT RISK AND DANGER.

2          MS. MAKAREWICZ:  CERTAINLY.  THE --

3          THE COURT:  SHE IS CORRECT -- MS. EKE IS CORRECT I

4  DID VIEW THE ARGUMENT MR. ANTONY MADE YESTERDAY AS THIN ON

5  FLIGHT RISK.

6          MS. MAKAREWICZ:  UNDERSTOOD, YOUR HONOR.

7          I'D LIKE TO TAKE DANGER TO COMMUNITY FIRST, THOUGH,

8  YOUR HONOR.

9          THE COURT:  GO AHEAD.  GO --

10          MS. MAKAREWICZ:  THE COMPLAINT ALLEGES NOT JUST THAT

11  DEFENDANT POSTED PUFFING VIDEOS THAT HE HAD THE CURE AND

12  PREVENTION PILL.  BUT THE COMPLAINT ALLEGES, AND WE WOULD

13  PROFFER, THE TESTIMONY OF FBI SPECIAL AGENT MADISON MC DONALD,

14  WHO DID THE ARREST, THAT MR. "MIDDLETON" CAME TO A MEETING ON

15  WEDNESDAY WILL PILLS TO PURCHASE AND SELL -- TO SELL THEM TO

16  THE UNDERCOVER.

17          FOUND IN HIS CAR WAS ALSO A LARGE QUANTITY OF PILLS.

18  THEY'VE BEEN SENT OR IN THE PROCESS OF BEING SENT TO THE DEA.

19          IT'S NOT JUST THE POSTING OF THE VIDEOS.  THAT'S NOT

20  THE FRAUD THAT OCCURRED HERE.  THE FRAUD OCCURRED WITH GETTING

21  INVESTORS INVOLVED IN HIS ALLEGED CURE AND PURPORTED PREVENTION

22  PILL AND, ALSO, ARRANGING A BUY WITH THE UNDERCOVER.

23          NOW, FLIGHT RISK -- AGAIN, I UNDERSTAND THAT THE

24  COURT'S POSITION OF THE SOUTHERN DISTRICT, BUT WE FEEL WITH THE

25  SECURITY THAT WE -- WE FEEL MORE CONFIDENT THAT HE IS LESS OF A

1  FLIGHT RISK.

2          I ALSO NOTE THAT DEFENDANT STATED THAT HE HAS NO

3  PASSPORT.  IN THE SOUTHERN DISTRICT HE WAS ORDERED TO TURN OVER

4  HIS PASSPORT.  NOW, THAT WAS 2014.  AND TODAY IS 2020.  BUT I

5  DON'T KNOW IF HE HAS A PASSPORT.  AND, OF COURSE, THE COURT HAS

6  HEARD MANY ARGUMENTS ABOUT HOW IT TAKES A DRIVE TO MEXICO FOR A

7  DEFENDANT TO FLEE.  SO, THAT'S NOT MY STRONGEST ARGUMENT.

8          MY ARGUMENT IS THAT FLIGHT RISK IS MITIGATED --

9          THE COURT:  MS. EKE, DID THE DEFENDANT SIGN A

10 DECLARATION OF --

11         MS. EKE:  YOUR HONOR, I HAVE A DIRECT DECLARATION --

12 DEC-LOW -- EXCUSE ME -- (LAUGHTER).  I CAN'T EVEN SAY THE WORD.

13 I HAVE THE FORM THAT I WENT THROUGH WITH MR. MIDDLEBROOK.  HE

14 WAS ISSUED A PASSPORT.  IT HAS SINCE BEEN EXPIRED.  HE NO

15 LONGER HAS IT.

16         I WAS GOING TO SIGN IT ON HIS BEHALF LIKE I DID THE

17 OTHER DOCUMENTS YESTERDAY.  BUT I DID TALK TO HIM ABOUT IT.  HE

18 HAD A PASSPORT.  IT'S EXPIRED.  HE NO LONGER HAS IT.  HE

19 UNDERSTANDS THAT HE CANNOT APPLY TO GET IT RENEWED OR GET A NEW

20 PASSPORT OR ANY TRAVEL DOCUMENT IN THE FUTURE.  I DO HAVE THAT

21 FORM THAT I FILLED OUT WITH MR. MIDDLEBROOK.

22         MS. MAKAREWICZ:  DEFENDANT LIED.  HE SAYS IN THE

23 PRETRIAL DEFENDANT IS A U.S. CITIZEN AND DOES NOT POSSESS A

24 U.S. PASSPORT.

25         MS. EKE:  YOUR HONOR, THAT'S CORRECT.  HE DOES NOT

1    POSSESS IT.  HE NO LONGER HAS THE PASSPORT AT ALL WHATSOEVER.

2            MS. MAKAREWICZ:  HE DIDN'T TELL PRETRIAL WHETHER OR

3    NOT HE HAS AN EXPIRED PASSPORT.  A PASSPORT IS A PASSPORT.  HE

4    COULD SAY THAT HE TRAVELED 12 YEARS AGO TO THE BAHAMAS AND A

5    YEAR AGO TO ROSARITO, BUT APPARENTLY HE DIDN'T USE HIS PASSPORT

6    FOR THAT BECAUSE IT WAS EXPIRED.

7            MS. EKE:  YOUR HONOR, I THINK THAT'S IN- --

8            THE COURT:  THE PILLS ARE BOGUS, RIGHT?

9            MS. MAKAREWICZ:  WE HAVE NO IDEA.  GOD HOPE -- I HOPE

10   THEY ARE.

11           THE COURT:  WE DON'T KNOW WHETHER THEY'RE --

12           MS. MAKAREWICZ:  I HOPE TO GOD THEY ARE.

13           THE COURT:  DO WE HAVE ANY EVIDENCE OF ANY INVESTORS

14   PUTTING UP MONEY?

15           MS. MAKAREWICZ:  WE'RE GATHERING THAT, YOUR HONOR.

16           WE HAD THE EVIDENCE IN THE COMPLAINT THAT HE SAID TO

17   THE U.C. UNDERCOVER THAT THIS WAS AN INVESTMENT FOR 300- TO

18   400,000 DOLLARS.

19           THE COURT:  I READ THE AFFIDAVIT.

20           MS. EKE:  YOUR HONOR, IF I MAY.

21           AS FAR AS I KNOW, THE ANSWER TO THAT IS NO.  AND WE

22   ARE DOING HIS DETENTION HEARING RIGHT NOW SO WE CAN ONLY GO

23   BASED ON WHAT WE KNOW.  AS FAR AS I KNOW, THE ALLEGATION IS IS

24   THAT THERE IS NOT ANY MONEY THAT WAS RECEIVED.  THAT WAS THE

25   INFORMATION THAT I GOT WHEN I TALKED TO THE AUSAS THAT WERE

1   HERE YESTERDAY.

2           MS. MAKAREWICZ:  DEFENDANT SAYS IN RECORDED PHONE

3   CALLS THAT HE HAS INVESTORS WHO ARE BEGGING HIM TO INVEST --

4   KEVIN DURANT, MAGIC JOHNSON, OTHER SPORTS FIGURES -- OH, JAY-Z,

5   THAT PEOPLE ARE -- NOW, AGAIN, WE'RE BACK TO --

6           THE COURT:  ALL OF WHICH COULD BE BLOWING SMOKE.

7           MS. MAKAREWICZ:  -- DEFENDANT'S CREDIBILITY.

8           A HUNDRED PERCENT YOUR HONOR.  BUT HE'S ACTIVELY

9   PARTICIPATING IN AN UNDERCOVER WITH A GUY HE DOESN'T EVEN KNOW

10  TO GET MONEY FOR HIS INVESTMENTS.

11          MS. EKE:  AND, YOUR HONOR, JUST SO WE'RE BACK ON THE

12  ISSUE.  THE ISSUE IS WHETHER OR NOT YOUR HONOR WOULD PERMIT US

13  -- OR PERMIT MR. MIDDLEBROOK TO BE RELEASED --

14          THE COURT:  THAT'S WHAT --

15          MS. EKE:  -- AND GIVE US A DATE --

16          THE COURT:  -- I WAS JUST ABOUT TO SAY.  I MEAN, WE

17  NEED TO UNDERSTAND THAT THE CONTEXT HERE IS ARE WE GOING TO

18  ALLOW HIM TO BE RELEASED BEFORE --

19          MS. MAKAREWICZ: ABSOLUTELY.

20          THE COURT:  -- THE PROPERTY IS USED AS --

21          ENTER ALL THE PAPERWORK FOR THE PROPERTY -- THAT

22  WE'RE GOING TO USE FOR SECURITY IS --

23          MS. MAKAREWICZ:  IN THIS DAY --

24          THE COURT:  -- COMPLETED.

25          MS. MAKAREWICZ:  EXCUSE ME FOR INTERRUPTING, YOUR

22

1    HONOR.

2              IF THE COURT IS GOING TO LET THE MOM PUT UP PART OF

3    THE HOME, THAT COULD TAKE WEEKS AND MONTHS IN THIS TIME.

4              I HAD A PROPERTY DEEDED IN FRONT OF JUDGE WALSH THAT

5    TOOK SIX WEEKS WHILE THE DEFENDANT WAITED IN MDC.  HE WAS NOT A

6    FLIGHT RISK.  HIS ISSUE WAS -- EXCUSE ME.  HE WASN'T A DANGER

7    TO THE COMMUNITY.  HIS ISSUE WAS FLIGHT RISK.  THAT UNDER

8    NORMAL CIRCUMSTANCES TOOK SIX WEEKS TO HAPPEN.

9              IF WE'RE GOING TO LET THE DEFENDANT OUT PRIOR TO

10   THIS, THERE IS NO TEMPORAL -- THERE IS NO TIMEFRAME.  AND WE'RE

11   GOING TO HAVE TO KEEP COMING BACK TO THE COURT UNTIL THIS IS

12   DONE.

13             IT BEHOOVES THE DEFENDANT AND HIS COUNSEL TO MOVE ON

14   THIS SO IT GETS HIM OUT QUICKER.  BUT IN THIS DAY AND AGE THE

15   KITSAP COUNTY IS REMOTELY WORKING.

16             MS. EKE:  YOUR HONOR --

17             THE COURT:  YOUR COMMENTS ABOUT THE TRANSACTION WITH

18   THE AGENT WITH THE PILLS, I DON'T RECALL SEEING THAT IN THE

19   AFFIDAVIT.

20             MS. MAKAREWICZ:  THAT HAPPENED AT THE ARREST.

21             AND, YOUR HONOR, I HAVE -- WE FILED AN ARREST WARRANT

22   -- EXCUSE ME, A ROLL-BACK WARRANT WITH JUDGE WILNER TODAY

23   DESCRIBING THOSE FACTS, IF YOU WOULD LIKE TO SEE THAT, YOUR

24   HONOR.

25             THE COURT:  YES, I WOULD.

1          MS. MAKAREWICZ:  HE HAS SIGNED OFF ON IT.

2          MAY I APPROACH?

3          THE COURT:  YES.

4          (PAUSE IN PROCEEDINGS.)

5          MS. MAKAREWICZ:  ON THE SECOND PAGE, YOUR HONOR, YOU

6     CAN SEE AS BEST AS YOU CAN IN A BLACK AND WHITE PHOTO THE

7     PICTURE OF DEFENDANT'S PASSENGER SEAT WITH PILLS, A BANK OF

8     AMERICA BAG -- CASH-DROP BAG AND AN ADDITIONAL CELL PHONE.

9     THAT IS THE ROLL-BACK THAT WE REQUESTED AND WERE GRANTED BY

10    JUDGE WILNER.

11         THE COURT:  HAVE YOU SEEN THIS?

12         MS. EKE:  YOUR HONOR, I WAS GIVEN THIS RIGHT BEFORE

13    WE ENTERED THE COURTROOM.  I HAVEN'T HAD AN OPPORTUNITY TO

14    FULLY READ IT.  I'VE ONLY BEEN ABLE TO SKIM IT IN THE TIME THAT

15    I WAS GIVEN IT.

16         BUT I WOULD JUST REMIND YOUR HONOR THAT THE

17    ALLEGATIONS ARE THE FACTORS THAT WEIGH THE LEAST IN TERMS OF

18    RELEASE AND CONDITIONS FOR THIS EXACT REASON.  WE WERE JUST

19    HANDED THIS AND HAVEN'T HAD AN OPPORTUNITY TO GO THROUGH IT OR

20    EVEN CONTEST ITS RELIABILITY OR ACCURACY.

21         THE COURT:  WELL, I APPRECIATE THAT WE'RE NOT HERE TO

22    RESOLVE THE MERITS.  BUT IF THE SALE INVOLVED PILLS THAT ARE

23    POTENTIALLY DANGEROUS, THAT'S CERTAINLY A FACTOR FOR THE COURT

24    TO CONSIDER AS TO DANGER.

25         MS. MAKAREWICZ:  YOUR HONOR, IF THE COURT WOULD MAKE

24

1  IT EASIER, WE COULD PUT AGENT MC DONALD ON THE STAND IN ORDER

2  TO TELL YOU ORALLY WHAT HAPPENED --

3          THE COURT:  I'M JUST LOOKING --

4          MS. MAKAREWICZ:  -- AT THE BUST.

5          THE COURT:  -- FOR THE SPECIFIC PARAGRAPH ABOUT THE --

6          MS. MAKAREWICZ:  I CAN FIND IT FOR THE COURT IF

7  THAT'S EASIER.

8          MS. EKE:  YOUR HONOR, JUST SO I'M CLEAR.  ARE YOU

9  LOOKING FOR SOMETHING THAT STATES WHAT THE PILLS ARE?

10          THE COURT:  NO.  JUST THE FACT THAT THIS TRANSACTION

11  WENT DOWN WITH THE AGENT.

12          MS. MAKAREWICZ:  IF I -- I CAN HAPPILY ASSIST THE

13  COURT IF I HAD MY COPY BACK.

14          THE COURT:  HERE.

15          (PAUSE IN PROCEEDINGS.)

16          MS. MAKAREWICZ:  FOR THE COURT, IT IS STARTING ON

17  THIS PAGE 3 THAT I'M HANDING BACK TO THE DEPUTY.

18          THE COURT:  PAGE 3?

19          MS. MAKAREWICZ:  HE'LL HAVE IT RIGHT HERE FOR YOU,

20  YOUR HONOR.

21          UNDER THE "PURPOSE OF THE AFFIDAVIT."

22          MS. EKE:  YOUR HONOR, IF I MAY HAVE A MINUTE TO TALK

23  TO MY CLIENT?

24          THE COURT:  GO AHEAD.

25          (MS. EKE CONFERRING WITH CLIENT.)

1            MS. EKE:  YOUR HONOR, I --

2            THE COURT:  AS FAR AS I'M CONCERNED, THIS SATISFIES

3    THE DANGER PRONG.

4            MS. EKE:  WELL, YOUR HONOR, I HAVE ANOTHER

5    SUGGESTION.

6            IF WE WERE WORRIED ABOUT WHAT HE'S GOING TO BE DOING

7    DURING THE TIME BEFORE THE PROPERTY IS SECURED, HE IS WILLING

8    TO BE ON ELECTRONIC MONITORING SO WE KNOW EXACTLY WHAT HE'S

9    DOING, WHERE HE'S GOING --

10           THE COURT:  NO --

11           MR. EKE:  -- BEFORE THE PROPERTY IS SIGNED.

12           THE COURT:  WE'RE NOT DOING -- WE'RE NOT DOING GPS

13   ELECTRONIC MONITORING AS A POLICY MATTER IN VIEW OF THE VIRUS

14   SITUATION BECAUSE IT INVOLVES PRETRIAL BEING IN TOO CLOSE A

15   CONTACT WITH SOMEBODY WHO MIGHT POTENTIALLY HAVE THE VIRUS.

16           WHAT WE HAVE SHIFTED TO -- CORRECT ME IF I'M WRONG --

17   IS THE BRACE I.D. SYSTEM WHERE THE DEFENDANT CALLS IN AND IS

18   TRACKED THAT WAY.

19           MR. EKE:  YOUR HONOR, HE WOULD BE WILLING TO DO THAT.

20           I THINK WHAT'S IMPORTANT AS THE GOVERNMENT MENTIONED

21   IS THE LENGTH OF TIME THAT IT TAKES TO GET A DEED ON A NORMAL

22   BASIS BECAUSE AS WE KNOW WE'RE NOT LIVING IN A NORMAL TIME.

23           AND I THINK --

24           THE COURT:  THAT'S FOR SURE.

25           MR. EKE:  I THINK IF WE AGREE THAT HE IS SOMEBODY WHO

1   CAN BE OUT IN THE COMMUNITY, THEN, I THINK IT'S WORTH IT TO

2   FIND AN ALTERNATIVE WHILE WE WAIT FOR THIS TO HAPPEN.

3           YOUR HONOR COULD SET A COURT DATE OR GIVE US A

4   DEADLINE AS TO WHEN THIS MUST BE DONE.  AND HE CAN EVEN SHOW UP

5   TO COURT AND APPEAR IN FRONT OF YOUR HONOR TO SHOW THAT IT HAS

6   BEEN DONE.  IT HAS BEEN COMPLIED WITH.

7           WE ARE ASKING THAT HE BE RELEASED AND NOT BE HELD

8   CONSIDERING THAT IT MAY TAKE SOME TIME TO GET THIS DONE.

9           MS. MAKAREWICZ:  THE GOVERNMENT FINDS THAT IRONIC.

10          DEFENDANT WANTS TO SELL PEOPLE PILLS TO CURE THE

11  COVID VIRUS AND WANTS TO TAKE ADVANTAGE OF THE PANDEMIC TO BE

12  OUT ON BOND WHILE HE COULD WAIT UNTIL THE PROPERTY IS PROPERLY

13  DEEDED.

14          THE COURT:  THAT'S WHAT WE'RE GOING TO DO.

15          MS. MAKAREWICZ:  THANK YOU, YOUR HONOR.

16          THE COURT:  YEP.

17          NOW, DO YOU WANT TO -- I THINK DANGER HAS BEEN

18  ESTABLISHED.  AND I -- THAT'S SUFFICIENT FOR US TO HAVE THE

19  CLIENT REMAIN IN CUSTODY UNTIL THE CONDITIONS OF RELEASE HAVE

20  BEEN SATISFIED.

21          MS. EKE:  YOUR HONOR, IF I MAY SAY ONE LAST THING.

22          THE COURT:  GO AHEAD.

23          MS. EKE:  I JUST WANT TO BRING THE COURT'S ATTENTION

24  TO THE FACT THAT ACCORDING TO THE 3142(F) FACTORS, WHEN WE'RE

25  DEALING WITH A FINANCIAL CRIME, THE ONLY ONE THAT'S RELEVANT IS

1   SERIOUS RISK OF FLIGHT.  WE'RE NOT IN DANGEROUS TERRITORY IN

2   ORDER TO DETAIN A PERSON.

3            THE COURT MUST FIND THAT THE GOVERNMENT ESTABLISHED A

4   SERIOUS RISK OF FLIGHT FOR US TO EVEN BE ABLE TO DETAIN MR.

5   MIDDLEBROOK.  AND I DON'T THINK WE EVEN MET THAT PRONG.  SO, I

6   DON'T BELIEVE THE COURT IS ABLE IN LIGHT OF THAT TO DETAIN MR.

7   MIDDLEBROOK.

8            I WOULD THINK WE HAVE TO DETERMINE WHAT CONDITIONS

9   WOULD BE SUITABLE.  AND SINCE WE HAVE COME TO AN AGREEMENT AS

10  TO SUITABLE CONDITIONS, I THINK IT'S ONLY FAIR THAT MR.

11  MIDDLEBROOK BE ALLOWED TO BE OUT ON SOME KIND OF MONITORING

12  WHILE HE'S ABLE TO SECURE THAT DEED AND RETURN TO COURT AND

13  PROVE THAT TO YOUR HONOR.

14            THE COURT:  OKAY.

15            MS. MAKAREWICZ:  DISAGREE, YOUR HONOR.

16            THE COURT:  YOU NEED TO ADDRESS FLIGHT RISK.

17            MS. MAKAREWICZ:  FLIGHT RISK, AGAIN, GOES WITH THE

18  FACT THAT DEFENDANT HAS BEEN ACCUSED OF A CRIME THAT IS HARMFUL

19  TO THE PUBLIC AND HAS EVERY REASON -- HE'S LIED ABOUT HIS

20  PASSPORT TO THE PRETRIAL SERVICES.  HE WENT TO ROSARITO AND

21  APPARENTLY DIDN'T USE HIS PASSPORT.  IT SHOWS THAT THE

22  DEFENDANT IS WELL EQUIPPED TO KNOW HOW HE CAN LEAVE THIS

23  COUNTRY.

24            MS. EKE:  YOUR HONOR, THE GOVERNMENT HAS TO SHOW

25  SOMETHING MORE THAN JUST ORDINARY RISK OF FLIGHT.  THERE'S A

1  REASON IT'S SERIOUS RISK OF FLIGHT.  IT HAS TO BE SOMETHING

2  MORE THAN AN ORDINARY RISK OF FLIGHT.  THAT PERSON HAS A

3  PASSPORT, THEY KNOW HOW TO CROSS A BORDER, THEY CAN LEAVE --

4  THAT JUST GOES TO ORDINARY RISK OF FLIGHT.

5         THERE'S A REASON WE ARE IN SERIOUS RISK OF FLIGHT.

6  AND NONE OF THAT EXISTS IN THIS CASE.

7         WE HAVE A PERSON WHO THE GOVERNMENT IS ALLEGING LIED

8  ABOUT HIS FINANCES.  THAT DOESN'T GIVE US SERIOUS RISK OF

9  FLIGHT.

10        WE HAVE A PERSON WHO DOES NOT HAVE A PASSPORT.  WE

11 HAVE A PERSON WHO DOES --

12        THE COURT:  WELL, IT'S A LITTLE MORE THAN --

13        MS. EKE:  -- WHO DOESN'T HAVE ANYWHERE TO --

14        THE COURT: -- LIED ABOUT HIS FINANCES.

15        MS. EKE:  WELL, AGAIN, THAT'S --

16        THE COURT:  IT'S ALSO ACTUALLY PEDDLING PILLS THAT

17 ARE POTENTIALLY DANGEROUS.

18        MS. EKE:  AGAIN, YOUR HONOR, AND THOSE ARE THE

19 ALLEGATIONS.  WE DON'T --

20        THE COURT:  SO, YOU'RE TELLING ME THAT IN A CASE OF

21 OBVIOUS DANGER TO OTHERS, THAT'S NOT SUFFICIENT FOR ME TO

22 DETAIN A DEFENDANT UNTIL THE CONDITIONS ARE SATISFIED THAT I'VE

23 IMPOSED.

24        MS. EKE:  NO, YOUR HONOR.  IT DEPENDS ON THE ACTUAL

25 OFFENSES THAT WE ARE DEALING WITH.

1          SO, WHEN WE ARE DEALING WITH FINANCIAL CRIMES, THE

2   FIRST STEP TO DETERMINING WHETHER OR NOT A DETENTION HEARING

3   CAN EVEN BE HELD IS WHETHER AN F(1) FACTOR HAS BEEN SATISFIED.

4          THAT FACTOR HAS TO BE SERIOUS RISK OF FLIGHT.  IT'S

5   NOT A DANGEROUS -- DANGEROUSNESS DOES NOT COME INTO PLAY HERE.

6          THE COURT:  OKAY.

7          MS. EKE:  IT'S WHETHER OR NOT SERIOUS RISK OF FLIGHT

8   EXISTS.

9          MS. MAKAREWICZ:  WE'RE NOT ASKING FOR DETENTION.  WE

10  AGREED TO BOND.

11         HE'S GOING TO BE DETAINED UNTIL HE CAN MEET THOSE

12  CONDITIONS.  WE'RE NOT SEEKING DETENTION.

13         THE COURT:  I THINK THAT'S RIGHT.  AND WE'RE GOING TO

14  DO IT THAT WAY.

15         AND HOPEFULLY PEOPLE WILL GET THE PAPERWORK DONE ON

16  THE REAL ESTATE AS QUICKLY AS POSSIBLE SO THAT THE DEFENDANT

17  WILL SPEND AS LITTLE TIME INSIDE AS POSSIBLE.

18         MS. EKE:  THANK YOU, YOUR HONOR.

19         THE COURT:  ALL RIGHT.  THIS COURT WILL SET BAIL IN

20  THE AMOUNT OF $150,000.

21         DO YOU WANT THE ENTIRE AMOUNT OF -- SIGNED BY THE

22  MOTHER OR SIGNED BY --

23         MS. MAKAREWICZ:  I WILL TAKE THE --

24         THE COURT:  -- DEFENDANT?

25         MS. MAKAREWICZ:  NO.  I WANT THE -- I WANT THE

1  MOTHER.

2           THE COURT:  ALL RIGHT.

3           ALL RIGHT.  WE'RE GOING TO DO THE APPEARANCE BOND OF

4  150,000 SIGNED BY MRS. MARTHA MIDDLEBROOK.

5           MS. EKE:  YOUR HONOR, I THOUGHT IT WAS 50,000.

6           THE COURT:  NO.  THE 50,000 IS THE AMOUNT OF

7  SECURITY.

8           MS. EKE:  OKAY.

9           THE COURT:  YOU NEED TO -- THE DEFENDANT NEEDS TO

10  FILE THE DECLARATION RE PASSPORT AND OTHER TRAVEL DOCUMENTS

11  WHICH, MS. EKE, YOU INDICATED WOULD DO.

12           TRAVEL IS RESTRICTED TO THE CENTRAL DISTRICT OF

13  CALIFORNIA.

14           THE DEFENDANT IS TO RESIDE AS APPROVED BY PRETRIAL

15  SERVICES AND NOT RELOCATE WITHOUT PRIOR PERMISSION FROM

16  PRETRIAL SERVICES.

17           DEFENDANT IS TO MAINTAIN OR ACTIVELY SEEK EMPLOYMENT

18  AND PROVIDE PROOF OF SAME TO PRETRIAL SERVICES.

19           EMPLOYMENT IS TO BE APPROVED BY PRETRIAL SERVICES.

20           DEFENDANT IS TO AVOID ALL CONTACT, DIRECTLY OR

21  INDIRECTLY, WITH ANY PERSON WHO IS A KNOWN VICTIM OR WITNESS IN

22  THE SUBJECT INVESTIGATION OR PROSECUTION.

23           DEFENDANT IS NOT TO POSSESS ANY FIREARMS, AMMUNITION,

24  DESTRUCTIVE DEVICES OR OTHER DANGEROUS WEAPONS.

25           IN ORDER -- AND IN ORDER TO DETERMINE COMPLIANCE MUST

1  AGREE TO SUBMIT TO A SEARCH OF HIS PERSON OR PROPERTY BY

2  PRETRIAL SERVICES IN CONJUNCTION WITH THE U.S. MARSHAL.

3          THE DEFENDANT IS NOT TO SELL, TRANSFER, OR GIVE AWAY

4  ANY ASSET VALUED AT $10,000 OR MORE WITHOUT NOTIFYING AND

5  OBTAINING PERMISSION FROM THE COURT.

6          THE DEFENDANT -- THE WAY THE CURRENT FORM IS SET UP,

7  IT DOESN'T REALLY MAKE REFERENCE TO THE VOICE IDENTIFICATION

8  SYSTEM.

9          IS THAT --

10          UNIDENTIFIED SPEAKER:  I'M SORRY, YOUR HONOR.  I'M

11  NOT THE PRETRIAL OFFICER.

12          THE COURT:  OH, ALL RIGHT.

13          UNIDENTIFIED SPEAKER:  I THINK THAT WOMAN IS.

14          UNIDENTIFIED SPEAKER:  THERE IS NO PRETRIAL OFFICER

15  PRESENT.

16          UNIDENTIFIED SPEAKER:  NO?

17          THE COURT:  I'M GOING TO DIRECT THE PARTIES TO --

18  SINCE WE HAVE SOME TIME --

19          MS. MAKAREWICZ:  I'LL SPEAK WITH PRETRIAL, YOUR

20  HONOR, TO GET THAT.  AND WE'LL FILE SOMETHING.

21          THE COURT:  AND WITH -- AND WITH MS. EKE AND --

22          MS. MAKAREWICZ:  YES, MA'AM.  YES, SIR.

23          THE COURT:  -- MAKE -- GET AGREEMENT ON THE

24  FUNCTIONING OF THE VOICE I.D. SYSTEM.

25          MS. MAKAREWICZ:  YEP.

1            THE COURT:  WHICH I'M --

2            (THE COURT AND CLERK CONFERRING.)

3            THE COURT:  WHY DON'T YOU GIVE A COPY OF THE EMAIL TO

4    BOTH COUNSEL AND LET THEM USE THAT AS THE TEMPLATE.

5            BECAUSE THEY NEED TO AGREE.

6            (THE COURT AND CLERK CONFERRING.)

7            THE COURT:  NO.  I'M WILLING TO --

8            THE CONDITION IS GOING TO BE THAT THE PARTIES AGREE

9    ON A VOICE I.D. SYSTEM CONDITION OF RELEASE AS SOON AS

10   POSSIBLE.

11           MS. MAKAREWICZ:  AGREED.

12           THE COURT:  MS. EKE.

13           MS. EKE:  YES, YOUR HONOR.

14           THE COURT:  OKAY.

15           NOW, I NEED SOMEBODY TO READ THE --

16           MS. MAKAREWICZ:  YES.

17           THE CONDITION --

18           THE COURT:  -- SOCIAL MEDIA PROHIBITION CONDITION.

19           MS. MAKAREWICZ:  SLOWLY.

20           I WOULD ALSO ASK THE COURT THAT NOT ONLY IT APPLY TO

21   SOCIAL MEDIA BUT TO THE DEFENDANT HIMSELF IN THAT HE IS

22   PROHIBITED FROM ANY ACTION, WHETHER IT'S ON SOCIAL MEDIA

23   ACCORDING TO THE FOLLOWING:

24           DEFENDANT AND ANY PERSON OR ENTITY OPERATING AT HIS

25   DIRECTION, INCLUDING ANY AGENT, OFFICER OR EMPLOYEE OF HIMSELF

1   OR ANY ENTITY HE CONTROLS AND ANY OTHER PERSON OR ENTITY IN

2   ACTIVE CONCERT OR PARTICIPATION WITH ANY OF THEM, SHALL NOT

3   PROMOTE, MARKET, ADVERTISE AND/OR SOLICIT INVESTMENTS IN ANY

4   ENTITY THAT IS PROMOTING, MARKETING AND/OR ADVERTISING ANY

5   PURPORTED CURE OR PREVENTATIVE TREATMENT OF COVID-19.

6            I CAN SEND -- I CAN GIVE THIS TO THE CLERK IF THAT'S

7   HELPFUL.

8            THE COURT:  WELL, BEFORE YOU DO THAT, I WANT TO MAKE

9   SURE MS. EKE IS IN AGREEMENT.

10           MS. EKE:  YOUR HONOR, WE ARE -- WE HAVE NO OBJECTIONS

11  TO THAT REQUIREMENT.

12           THE COURT:  OKAY.  GREAT.

13           ALL RIGHT.

14           DO YOU UNDERSTAND THESE CONDITIONS OF YOUR RELEASE,

15  MR. MIDDLEBROOK, THAT I'VE JUST --

16           THE DEFENDANT:  I'M NOT FAMILIAR WITH A -- WITH A

17  VOICE-ACTIVATED SYSTEM AT ALL.  BUT MY OWN VITAMINS --

18           THE COURT:  YOU NEED TO SPEAK MORE CLEARLY INTO THE

19  MIC.

20           THE DEFENDANT:  OH --

21           NO --

22           THE COURT:  I CAN'T -- I CAN BARELY HEAR YOU.

23           THE DEFENDANT:  I'M NOT FAMILIAR WITH SOME -- A

24  VOICE-ACTIVATED SYSTEM.

25           BUT I JUST WANT TO SAY, YOUR HONOR, I'M -- I'M GOING

34

1   TO SHOW UP FOR ALL MY APPEARANCES LIKE I DID LAST TIME.

2            THE COURT:  WELL, YOU WILL CALL IN TO A NUMBER WHICH

3   THROUGH BIOMETRIC -- OR TECHNOLOGY IT WILL INDICATE WHERE YOU

4   ARE LOCATED.

5            THE DEFENDANT:  SO --

6            THE COURT:  IT'S MEANT AS A LOCATION DEVICE SO THAT

7   YOU WILL CHECK IN EVERY  -- HOWEVER OFTEN --

8            THE DEFENDANT:  LIKE ONCE A WEEK.

9            THE COURT: -- PRETRIAL SERVICES --

10           THE DEFENDANT:  ONCE A WEEK OR SOMETHING?

11           THE COURT: -- REQUIRES.

12           THE DEFENDANT:  LIKE ONCE A WEEK OR SOMETHING?

13           THE COURT:  NO.  IT WILL BE MORE FREQUENT THAN THAT

14  I'M SURE.  BUT THAT'S UP TO PRETRIAL.

15           THE DEFENDANT:  LIKE ONCE A DAY?

16           THE COURT:  BUT YOU MAKE A PHONE CALL.  AND THAT'S --

17  SO, YOU KNOW, IT'S JUST BETTER THAN WEARING AN ANKLE MONITOR.

18           THE DEFENDANT:  OKAY.

19           THE COURT:  IT SERVES THE SAME PURPOSE.

20           THE DEFENDANT:  JUST SO I UNDERSTAND, IT'S LIKE ONCE

21  A DAY I CALL IN TO THE THING?

22           THE COURT:  THAT WILL ALL GET EXPLAINED ONCE THIS

23  ADDITIONAL CONDITION GETS WORKED OUT BETWEEN COUNSEL AND

24  SUBMITTED TO THE COURT --

25           THE DEFENDANT:  THE OTHER THING --

1          THE COURT:  -- WHICH YOU ARE INSTRUCTED TO DO

2    FORTHWITH.

3          MS. MAKAREWICZ:  UNDERSTOOD.

4          THE DEFENDANT:  IF I COULD BE RELEASED TO HELP MY

5    MOTHER WITH HER TRANSFER OF THE PROPERTY OR -- THAT'S WHAT I

6    WAS -- WHAT THAT WAS ABOUT.

7          AND I'M -- I'M NO DANGER TO THE COMMUNITY AT ALL.

8    AND  --

9          THE COURT:  THERE'S NOT GOING TO BE ANY RELEASE UNTIL

10   THE PROPERTY IS SIGNED OVER.

11         WHATEVER HELP YOU NEED WE'LL HAVE TO WORK -- YOU

12   SHOULD WORK OUT WITH PRETRIAL SERVICES.

13         IF IT'S NECESSARY TO TRANSPORT YOU TO WASHINGTON --

14         IS IT?

15         MS. MAKAREWICZ:  YES, YOUR HONOR.  IT'S PORT ORCHARD.

16         THE COURT:  IF IT'S NECESSARY TO TRANSFER YOU THERE

17   IN ORDER TO MAKE THAT HAPPEN, ACCOMPANIED BY A MARSHAL, THEN,

18   SOMETHING LIKE THAT --

19         THE DEFENDANT:  THE OTHER THING ALSO --

20         THE COURT: -- MAY BE DONE.

21         THE DEFENDANT:  -- 150,000, JUST ONCE WE SECURE THE

22   --

23         WHAT'S THAT?

24         (PAUSE IN PROCEEDINGS.)

25         THE DEFENDANT:  DON'T -- I UNDERSTAND THE 50,000 ON

1    TOP OF THE 150,000?

2              THE COURT:  NO.  IT'S 150,000 APPEARANCE BOND, 50,000

3    OF WHICH IS SECURED BY THE PROPERTY.

4              THE DEFENDANT:  OKAY.

5              THE COURT:  NOT 150 PLUS 50.

6              THE DEFENDANT:  OKAY.

7              THE COURT:  ALL RIGHT.

8              NOW --

9              (THE COURT AND CLERK CONFERRING.)

10             THE COURT:  AGAIN, DO YOU UNDERSTAND THE TERMS AND

11   CONDITIONS OF YOUR RELEASE?

12             THE DEFENDANT:  JUST ONE OTHER THING JUST TO KNOW.

13             I CAN JUST DELETE THE TWO POSTS --

14             MS. EKE:  YOU WANT TO STOP --

15             THE DEFENDANT:  STOP?

16             MS. EKE:  STOP --

17             THE DEFENDANT:  WELL, I'M NOT --

18             MS. EKE:  NO.  STOP.

19             THE COURT:  WE CAN'T BE HAVING THIS, MS. EKE.

20             THE DEFENDANT:  OH, WE CAN'T -- OKAY.  ALL RIGHT.  I

21   UNDERSTAND.

22             (MS. EKE AND CLIENT CONFERRING.)

23             THE COURT:  DO YOU UNDERSTAND THE CONDITIONS OF

24   RELEASE THAT I READ OFF?

25             THE DEFENDANT:  I -- EX- --

1          THE COURT:  YOU HEARD ME -- YOU HEARD THE CONDITIONS

2    AS I STATED THEM, RIGHT?

3          THE DEFENDANT:  YES.  CAN I ASK ABOUT THE -- CAN I

4    ASK ABOUT THE SOCIAL MEDIA PART REAL QUICK OR NO?

5          MS. EKE:  YOUR HONOR, IF I COULD HAVE ONE MINUTE TO

6    TALK TO HIM.

7          (MS. EKE AND CLIENT CONFERRING.)

8          (THE COURT AND CLERK CONFERRING.)

9          THE DEFENDANT:  YES, YOUR HONOR.

10          THE COURT:  LET YOUR COUNSEL MAKE THE ARGUMENT.

11          MS. EKE:  YOUR HONOR, HE UNDERSTANDS.  HE JUST HAD A

12    QUESTION ABOUT THE SOCIAL MEDIA RESTRICTIONS.

13          I JUST ADVISED HIM THAT HE'S NOT ALLOWED TO USE

14    SOCIAL MEDIA AS THE GOVERNMENT MENTIONED TO PROMOTE, MARKET,

15    ADVERTISE OR SOLICIT ANY INVESTORS.  BUT HE IS ALLOWED TO USE

16    SOCIAL MEDIA.

17          MS. MAKAREWICZ:  HE'S NOT ALLOWED TO USE SOCIAL MEDIA

18    TO DO WHAT I HAD SAID -- TO PROMOTE OR SOLICIT ANY INVESTMENTS.

19          THE COURT:  THAT'S JUST WHAT SHE SAID.

20          MS. MAKAREWICZ:  YES.

21          THE COURT:  SO, YOU'RE IN AGREEMENT, RIGHT?

22          THE DEFENDANT:  YES, YOUR HONOR.

23          THE COURT:  ALL RIGHT.

24          YOU UNDERSTAND THAT IF YOU VIOLATE ANY OF THESE TERMS

25    AND CONDITIONS OF YOUR RELEASE, THAT YOUR RELEASE ORDER WILL BE

1   REVOKED.  THE BOND WILL BE FORFEIT.  AND THERE WILL BE A

2   WARRANT ISSUED IMMEDIATELY FOR YOUR ARREST.

3            DO YOU UNDERSTAND THAT?

4            THE DEFENDANT:  YES, YOUR HONOR.

5            THE COURT:  AND YOU'RE PREPARED TO ACCEPT AND AGREE

6   AND ABIDE BY THESE CONDITIONS?

7            THE DEFENDANT:  YES, YOUR HONOR.

8            THE COURT:  OKAY.

9            (PAUSE IN PROCEEDINGS.)

10           MS. EKE:  YOUR HONOR, I HAVE A COPY OF THE DEC- --

11  DECLARATION -- GOT IT THAT TIME.

12           THE COURT:  YOU'RE SO ARTICULATE, BUT YOU --

13           MS. EKE:  THAT WORD IS --

14           (LAUGHTER.)

15           THE COURT:  -- CAN'T SEEM TO GET THAT WORD OUT.

16           MS. EKE:  THAT WORD IS NOT WORKING FOR ME.

17           I SIGNED IT ON BEHALF OF MR. MIDDLEBROOK.

18           IF YOU WANT TO CONFIRM THAT HE HAS AUTHORIZED ME TO

19  SIGN IT ON HIS BEHALF.

20           THE COURT: THE LAST THING WE NEED TO DO IS AGREE ON

21    --

22           YOU CAN GIVE THAT BACK TO THE GOVERNMENT --

23           -- A DEADLINE FOR THE POSTING OF THE PROPERTY.

24           YOU WANT TO SAY 60 DAYS?

25           MS. MAKAREWICZ:  YES, YOUR HONOR.

1                   THE COURT:  AND IF MORE TIME IS NEEDED, YOU CAN ASK

2      FOR IT.

3                   MS. MAKAREWICZ:  YES, YOUR HONOR.

4                   THE COURT:  OBVIOUSLY, IF YOU CAN GET IT DONE BEFORE

5      THEN, THAT WOULD BE BETTER BECAUSE YOUR CLIENT WILL GET

6      RELEASED AS SOON AS IT'S POSTED.

7                   MS. EKE:  YES, YOUR HONOR.

8                   (PAUSE IN PROCEEDINGS.)

9                   THE COURT:  I THINK THAT COVERS EVERYTHING.

10                  MS. MAKAREWICZ:  YES, YOUR HONOR.

11                  THANK YOU.

12                  MS. EKE:  WELL, YOUR HONOR, I HAVE ONE MORE THING TO

13     PLACE --

14                  (LAUGHTER.)

15                  MS. EKE:  -- ON THE RECORD.

16                  I KNOW YOUR HONOR SCHEDULED -- I BELIEVE WE SCHEDULED

17     A POST-INDICTMENT ARRAIGNMENT YESTERDAY WHEN WE WERE HERE.

18                  IS THAT CORRECT?

19                  I JUST WANTED TO PUT ON THE RECORD I KNOW IN

20     ACCORDANCE WITH --

21                  MS. MAKAREWICZ:  I'M SORRY.

22                  THE COURT:  ARE YOU TALKING ABOUT THIS CASE?

23                  MS. EKE:  FOR THIS CASE YOUR HONOR GAVE US A COURT

24     DATE FOR THE POST-INDICTMENT ARRAIGNMENT.

25                  THE COURT:  OKAY.

40

1              MS. EKE:  I JUST WANT TO PLACE ON THE RECORD IN

2    ACCORDANCE WITH THE POLICIES THAT WE WILL BE WAIVING THE ACTUAL

3    PHYSICAL APPEARANCE --

4              THE COURT:  OKAY.

5              MS. EKE:  -- A LOT OF OUR OFFICES -- OUR OFFICE HAS

6    BEEN DOING THAT DUE TO THE VIRUS.

7              THE COURT:  RIGHT.

8              MS. EKE:  MR. MIDDLEBROOK IS WAIVING HIS APPEARANCE

9    AT THAT ARRAIGNMENT.

10             I WILL BE FILING SOMETHING, BUT I WANTED TO PLACE IT

11   ON THE RECORD.

12             THE COURT:  IS THAT CORRECT, MR. MIDDLEBROOK?

13             THE DEFENDANT:  YES, YOUR HONOR.

14             THE COURT:  OKAY.

15             MS. EKE:  THAT'S ALL, YOUR HONOR.

16             (PAUSE IN PROCEEDINGS.)

17             MS. MAKAREWICZ:  WE STILL NEED TO SHOW UP.

18             (PAUSE IN PROCEEDINGS.)

19             (MS. EKE AND CLIENT CONFERRING.)

20             MS. EKE:  YOUR HONOR, THAT'S -- THAT'S ALL WE HAVE.

21             MS. MAKAREWICZ:  NOTHING, YOUR HONOR.

22             THE COURT:  THANK YOU, BOTH.

23             MS. MAKAREWICZ:  THANK YOU, YOUR HONOR.

24             THE CLERK:  COURT IS IN RECESS.

25             (PROCEEDINGS ADJOURNED AT 1:48 P.M.)

41

1

2

3

4                          C E R T I F I C A T E

5

6

7          I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
8  ABOVE-ENTITLED MATTER.

9

   /S/ DOROTHY BABYKIN                    4/2/20
10 _____    _____
   FEDERALLY CERTIFIED TRANSCRIBER        DATED
11 DOROTHY BABYKIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25